# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ALEXANDER CALDERÓN-LÓPEZ,

**Plaintiff**,

v.

UNITED STATES OF AMERICA,

**Defendant**.

**Civil No.** 16-1055 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant United States' motion to dismiss pursuant to Federal Rule of Civil of Procedure 12(b)(1) ("Rule 12(b)(1)"), and Federal Rule Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket No. 7.) For the reasons set forth below, the United States' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.  Background

On January 16, 2016, plaintiff Alexander Calderón-López ("Calderón") commenced a civil action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. sections 1346(b) and 2761 *et seq.* (Docket No. 1.) The claims set forth in the complaint stem from Calderón's 2012 arrest by Drug Enforcement Administration ("DEA") agents. The Court takes the following facts as true, as pled in Calderón's complaint. Id.

Beginning in 2008, Calderón worked as a refrigeration technician in the aviation division for the Port Authority of Puerto Rico ("Port Authority"). (Docket No. 1 at p. 4.) During this time, the DEA conducted an investigation regarding the transportation of illegal drugs into the United States by Port Authority employees. Id. DEA agents learned that a man known as "Calderon el de los puertos" participated in illegal activity. Id. at p. 6. The physical description for "Calderon el de los puertos" differed from Calderón's physical description. Id.

On May 31, 2012, a federal grand jury sitting in the District of Puerto Rico indicted twenty-five individuals for drug trafficking-related offenses. Id. at p. 4. The indictment charged "Alexander Calderón-López, a/k/a El De Puertos," with two counts of conspiring to possess with the intent to distribute a controlled substance in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. section 1962, (counts one and two), and two counts of possessing with the intent to distribute five kilograms or more of crack cocaine in violation of 21 U.S.C. section 841(a)(1) and (2) (counts four and ten). Id.; see Case No. 12-434 (CCC), Docket No. 2.[1] On that same day, the

---

[1] The Court takes judicial notice of the pleadings and judicial orders docketed in Case No. 12-434 (CCC). See Rodríguez-Torres v. Gov't Dev. Bank of P.R., 750 F. Supp. 2d 407, 411 (D.P.R. 2010) (Besosa, J.) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand") (internal citation omitted).

magistrate judge signed a warrant for Calderón's arrest. (Case No. 13-434, Docket No. 5 at p. 5.)

Federal law enforcement officers arrested Calderón on June 6, 2016. (Docket No. 1 at p. 5.) After his initial appearance before the magistrate judge, Calderón remained detained at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico for five days. Id. On June 11, 2012, Calderón entered a plea of not guilty at his arraignment, and the magistrate judge set bail at $50,000 ($40,000 secured and $10,000 unsecured). (Case No. 12-434, Docket No. 79.) Calderón's parents pledged their property to secure his release. Id. The magistrate judge authorized Calderón's release on June 13, 2012, subject to home confinement and electric monitoring. (Case No. 12-434, Docket No. 95.) Before his release, Calderón spent a total of seven days at MDC.

Following the indictment, federal agents interviewed Calderón's co-defendants. (Docket No. 1 at p. 7.) Several co-defendants informed federal agents that the agents had confused Calderón with another individual, because Calderón had not participated in the offenses alleged in the indictment. Id. Calderón alleges that despite these exculpatory disclosures, the United States proposed a plea agreement in which the parties would recommend to the Court a sentence of ten years' imprisonment. Id. at p. 8. Calderón rejected the plea offer. Id.

Calderón nearly went to trial on five separate occasions, the first four of which the court vacated. The Court scheduled the fifth and final trial date for February 3, 2014.[2] (Case No. 12-434, Docket Nos. 381, 581, 645 and 679.) Five days before trial, the United States moved to dismiss the indictment against Calderón without prejudice pursuant to Federal Rule of Criminal Procedure 48(a), and in the interests of justice. (Case No. 12-434, Docket No. 747.) The court granted the United States' motion to dismiss on March 25, 2014, entering judgment of dismissal the same day. (Case No. 12-434, Docket No. 848.) The prosecution against Calderón spanned a total of 20 months.

Calderón filed an administrative claim with the DEA on February 19, 2015, eleven months after the entry of the judgment of dismissal.[3] (Docket No. 9, Ex. 1.) In his administrative claim, Calderón maintains that his "constitutional rights were

---

[2] The court initially set trial for October 11, 2012. (Case No. 12-434, Docket No. 184.)

[3] The government first denied that Calderón filed an administrative claim, relying on the sworn declaration of Marcia Tiersky ("Tiersky"), Acting Assistant Deputy Chief Counsel for the Civil Litigation Section of the Department of Justice. (Docket No. 8 at p. 7.) Calderón submitted the administrative claim he filed with the DEA, however, complete with a stamp indicating that the DEA received his claim on February 19, 2005. (Docket No. 9, Ex. 1.) According to Tiersky's supplemental declaration, a DEA employee "confirmed that he had received the signed form, but that he does not have any recollection about what he did with the form after receiving and signing it." (Docket No. 12, Ex. 1 at p. 2.) The United States now concedes that Calderón filed an administrative claim. (Docket No. 12 at p. 2.)

violated" because he "was unlawfully arrested and charged."   Id.

Calderón states:

> The negligent and wrongful acts of the federal agents
> have caused me very serious mental and emotional
> damages.  My reputation has been adversely affected, I
> was fired from my job; I lost my marriage; I suffered of
> [sic] depression; I require psychological treatment; I
> have trouble sleeping; I was unjustly incarcerated; *etc*.

Id.  Subsequently, Calderón commenced this action with the filing

of a complaint on January 12, 2016.  (Docket No. 1.)

Calderón grounds his complaint on the First, Fourth, Fifth,

Eighth, and Fourteenth Amendments to the United States

Constitution, the FTCA, and the Puerto Rico General Torts Statute,

Articles 1802 and 1803 of the Civil Code.  Laws of P.R. Ann. tit.

31 §§ 5141, 5142.  Id. at p. 1.  He concludes the complaint by

asserting two counts:  a malicious prosecution claim pursuant to

Puerto Rico law (count one), and a negligence claim pursuant to

the FTCA (count two).  Id. at p. 17.  Calderón alludes to a myriad

of additional claims, however, including:  (1) intentional

infliction of emotional distress, (2) negligent selection,

supervision and retention of agents, employees, and informants,

(3) conspiracy to deprive him of his civil rights, and (4) loss

of consortium.  Id. at p. 4.

The United States moved to dismiss the complaint, arguing

that Calderón's claims are time-barred, and that the

constitutional tort claims fall beyond the scope of the FTCA. (Docket No. 8.) The Court agrees that all claims, except the malicious prosecution claim, must be dismissed.

## II. Rule 12(b)(1) and Rule 12(b)(6) Standards

Rule 12(b)(1) allows a court to dismiss a complaint when the Court's subject-matter jurisdiction is not properly alleged. Fed.R.Civ.P. 12(b)(1). The standard applied to a Rule 12(b)(1) motion is similar to that of a Rule 12(b)(6) motion because the Court accepts the complaint's well-pled facts as true and views them, and the inferences drawn from them, in a light most favorable to the pleader. See Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998); see also Soto v. McHugh, 158 F. Supp. 3d 34, 46 (D.P.R. 2016) (Gelpi, J.). Thus, "[a] district court must construe the complaint liberally." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555. In doing so,

the Court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011). A complaint that adequately states a claim may still proceed even if "recovery is very remote and unlikely." Ocasio-Hernández, 640 F.3d at 13 (internal quotation marks and citations omitted).

## III. Federal Tort Claims Act

The doctrine of sovereign immunity is paramount to the Court's analysis. "It is well settled that the United States, as sovereign, may not be sued without its consent." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995.) Pursuant to the FCTA, the United States consents:

> to be sued for damages for personal injury caused by 'the negligent or wrongful act or omission' of a federal employee 'while acting within the scope of his employment,' provided that in the same circumstances a private employer would be liable for the acts of his employee under the [law of the place].

Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 681 (1st Cir. 1999) (quoting 28 U.S.C. §§ 1346(b), 2674, 2675(a)). The "law of the place" for purposes of the FTCA is determined by "where the alleged wrongful acts occurred." Rucci v. United States INS, 405 F.3d 45, 48 (1st Cir. 2005) (holding that "Puerto Rico law provides the relevant standards for the substantive claims" pursuant to the

FTCA because the alleged torts occurred in Puerto Rico.)  Because the United States' allegedly wrongful conduct occurred in Puerto Rico, Puerto Rico law controls.

To bring an FTCA claim, "a claimant must file an Administrative Claim with the appropriate federal agency within two years of the accrual of the claim and then file a tort claim against the United States within six months after a denial of (or failure to act upon) that claim by the administrative agency." Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000) (citing 28 U.S.C. §§ 2401(b), 2675.)  The two-year statute of limitations is jurisdictional.  González v. United States, 284 F.3d 281, 287 (1st Cir. 2002).  Failure to comply with the FTCA's statute of limitations requires dismissal for lack of subject matter jurisdiction.  Coska v. United States, 114 F.3d 319, 323 n.8 (1st Cir. 1997).  As plaintiff, Calderón shoulders the burden of establishing the existence of federal subject matter jurisdiction. See, e.g., Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003).  To meet this burden, Calderón must establish that that he filed a claim within the FTCA's two-year statute of limitations period.  Id. ("[F]ailure to comply with the FTCA's statute of limitations means that the district court lacks subject matter jurisdiction to entertain the suit and must dismiss it.").

## A. Constitutional Claims

Calderón alleges that the United States violated his rights pursuant to the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. (Docket No. 1 at p. 1.) In deciding whether these claims survive, the Court is guided by the principle that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. United States v. Mitchell, 463 U.S. 206, 212 (1983). Based on the allegations set forth in the complaint, the Court presumes that Calderón intends to anchor these claims on the FTCA, because he makes no Bivens claim against a federal officer, and there is no other apparent basis upon which Calderón could potentially establish a waiver of sovereign immunity.[4]

---

[4] In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized an implied caused of action for damages against federal officers pursuant to the Fourth Amendment. 403 U.S. at 397. The Supreme Court later extended its holding in Bivens to the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228 (1979), and the Eighth Amendment, Carlson v. Green, 446 U.S. 14 (1980). The statute of limitations for Bivens actions is based on the applicable state statute of limitations for personal injuries, which is one year pursuant to Puerto Rico law. See Laws of P.R. Ann. tit 31, § 5298; Roman v. Townsend, 224 F.3d 24, 29 (1st Cir. 2000) (holding that a Bivens claim in the District of Puerto Rico is subject to a one-year statute of limitations). The statute of limitations is triggered on the date of accrual. Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1 (1st Cir. 2005) (holding that the statute of limitations pursuant to Puerto Rico law begin to run form the day after the date of accrual). The date of accrual is governed by federal law. See Leavell v. Kieffer, 189 F.3d 492 (7th Cir. 1999) ("Federal law defines the accrual of a Bivens claim."). The date of accrual is when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Calero-Colón v. Betancourt-Lebrón, 68 F.3d 1, 3 (1st Cir. 1995) (citation omitted). To assert a Bivens claim Calderón would have to demonstrate that the claims arising from the First, Fourth, Fifth, Eighth, and Fourteenth Amendments fall within the one-year statute of limitations.

The FTCA, however, is an improper basis for the constitutional tort claims. The Supreme Court's decision in Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471 (1994), is dispositive. In Meyer, the Supreme Court held that claims alleging constitutional violations are not "cognizable" pursuant to the FTCA's jurisdictional grant. 510 U.S. at 475; see also 28 U.S.C. § 1346. To maintain an FTCA cause of action, plaintiffs "must allege, *inter alia*, that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'" Id. at 477. Constitutional causes of action without reference to the underlying "law of the place" are deficient. Plaintiffs must identify a "source of substantive liability pursuant to the FCTA." Id. at 478. Consequently, the Supreme Court concluded that "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort violations," Id. at 477. Accordingly, Calderón cannot rely on the FTCA to sustain the constitutional tort violations. Consequently, the causes of action arising from the First, Fourth, Fifth, Eighth, and Fourteenth Amendments are **DISMISSED.**

### B.  Negligence

The negligence cause of action is dismissed pursuant to Rule 12(b)(6) for two reasons. First, Calderón fails to state a

claim for negligence pursuant to Puerto Rico law. Additionally, Calderón's allegations of negligent investigation and prosecution are subject to the FTCA's discretionary function exception from the waiver of sovereign immunity. 28 U.S.C. § 1346(b)(1).

### 1.    The Negligence Cause of Action is Deficient

In Puerto Rico, Article 1802 of the Civil Code provides the pertinent cause of action resulting from an individual's negligent act. P.R. Laws Ann. tit 31, § 5141; Isla Nena Air Servs. v. Cessna Aircraft Co., 449 F.3d 85, 88 (1st. Cir. 2006). Pursuant to Article 1802, a plaintiff must prove three elements of negligence: (1) an injury, (2) a breach of duty, and (3) adequate causation. Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007) (internal citations omitted). The second element requires plaintiffs to establish the existence of a duty and its breach. Id. (quoting Rodríguez-Ortega v. Philip Morris, Inc., Civil No. 03-1529 (CCC), 2005 U.S. Dist. LEXIS 48126 *5-6 (D.P.R. Nov. 7, 2005) ("Plaintiffs bear the burden of establishing the applicable standard of care and proving that [defendant] acted below that standard.") (internal citations and quotations omitted).

The duty and breach identified in the complaint fall beyond the waiver of sovereign immunity set forth in the FTCA. This defect is fatal to Calderón's negligence cause of action.

The FTCA waives sovereign immunity only for negligent or wrongful acts in which a "private person" would be liable.  See, e.g., Franco De Jerez v. Burgos, 947 F.2d 527 (1st Cir. 1991) (referring to FTCA causes of action as claims "requir[ing] improper government conduct such as would have made liable a private person under the law of the place where the act or omission occurred").  Ultimately, the United States is liable for tortious actions "in the same manner and to the same extent as a private individual in like circumstances."  28 U.S.C. § 2674.

Calderón imposes a duty on the United States that cannot be assigned to private individuals in similar circumstances.  Calderón avers that the United States negligently supervised DEA agents, failed to disclose exculpatory evidence in a timely manner, failed to maintain proper investigative techniques, disregarded DEA agency directives, and failed to discipline non-compliant DEA agents.  (Docket No. 1 at pp. 10—14.) In sum, the United States purportedly breached its duty to prosecute Calderón within the confines of applicable DEA and Department of Justice procedures, and relevant rules of discovery. Indeed, "there can be no FTCA jurisdiction where the challenged government conduct has no parallel in the private sector and the asserted liability arises from a federal statutory or regulatory obligation with no comparable common law principle."  Bolduc v.

United States, 402 F.3d 50, 57 (1st Cir. 2005) (dismissing
negligence claim pursuant to the FTCA because "Wisconsin's
recognition of a governmental duty to disclose exculpatory
evidence does not ground private liability under that state's law,
[and] it cannot serve as a hook on which to hang federal
jurisdiction"); see also Zabala Clemente v. United States, 567
F.2d 1140, 1150 (1st Cir. 1977) ("Nor do we believe that there is
any sound policy basis for requiring that government attempts to
protect the public must be accompanied by per se tort liability if
they are unsuccessfully carried out.").[5]  Accordingly, Calderón
has no basis to hold the United States or its officers liable for
negligence pursuant to the FTCA.

## 2.    The Discretionary Function

Liability pursuant to the FTCA is subject to the
various exemptions contained in the FTCA, including the
"discretionary function" exception.  28 U.S.C. section 2680.  That
exception provides, in pertinent part, that the United States'

---

[5] See also Barone v. United States, No. 12-4103, 2014 U.S. Dist. LEXIS 117638
(S.D.N.Y. Aug. 21, 2014) (granting defendant's motion to dismiss FTCA negligence
claim because "plaintiff has failed to allege facts plausibly suggesting that
AUSA Rocah or the federal agents had a duty to refrain from requesting that he
be detained in the SHU, and we have been unable to identify any caselaw that
might support such a claim"); Direnzo v United States, 690 F. Supp. 1149, 1155
(D. Conn. 1988) ("The gravamen of plaintiff's claim is that the agents
instituted and continued a criminal prosecution against him, an innocent
person[, h]owever[,] neither New York nor the common law impose liability upon
even a private person for mere negligence in instituting or continuing a
criminal prosecution for a crime which has actually occurred.").

waiver of sovereign immunity through the FTCA shall not extend to "[a]ny claim [. . .] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The exception serves to discourage second-guessing of governmental decisions, allowing employees of the United States to perform their responsibilities without constant fear of spawning litigation.  See United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 808-14 (1984) (holding that the "discretionary function exemption precludes a tort action based upon the conduct of the FAA in certifying these aircraft for use in commercial aviation"); Nogueras-Cartagena v. United States, 172 F. Supp. 2d 296, 317 (D.P.R. 2001) (Domínguez, J.).  When a given claim falls within the discretionary function exception, it must be dismissed for lack of subject matter jurisdiction.  Abreu v. United States, 468 F.3d 20, 25 (1st Cir. 2006) (internal citation omitted); Kelly v. United States, 924 F.2d 355, 359-360 (1st Cir. 1991).

Courts employ a two-part test to determine whether the discretionary function exception to the FTCA encompasses the challenged conduct.  United States v. Gaubert, 499 U.S. 315, 322-23 (1991).  First, a court must determine if the behavior at issue

is in fact discretionary in nature.  Kelly, 924 F.2d at 360.  This factor generally requires an analysis of whether the government employee's duties obligate him or her to make independent decisions.  Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536, (1988); Kelly, 924 F.2d at 360; K.W. Thompson Tool Co. v. United States, 836 F.2d 721, 725 (1st Cir. 1988).  Second, because the exception "protects only governmental actions and decisions based on considerations of public policy," Berkovitz, 486 U.S. at 537, courts must determine whether "some plausible policy justification could have undergirded the challenged conduct." Shansky v. United States, 164 F.3d 688, 692 (1st Cir. 1999).

Although the First Circuit Court of Appeals has not addressed whether the discretionary function exception precludes claims of negligent investigation, it has clearly indicated that, "[s]ince decisions to investigate, or not, are at the core of the law enforcement activity," investigative activity involves the type of "policy-rooted decision[-]making that section 2680(a) was designed to safeguard." Kelly, 924 F.2d at 362.  Consequently, other courts in this district have concluded that "allegations of negligent investigation against the United States fall within the discretionary function exception of the FTCA and are barred for lack of subject matter jurisdiction." Nogueras-Cartagena, 172 F. Supp. 2d at 319 (Domínguez, J.); see also Torres-Dueño v. United

<u>States</u>, 165 F. Supp. 2d 71, 74 (D.P.R. 2001) (Laffitte, J.) (holding that the court lacked subject matter jurisdiction over claim alleging that federal agents had negligently investigated the plaintiff's case).

In support of his negligence claim, Calderón suggests that he should have never been prosecuted because, among other reasons, the physical description presented to the grand jury differed from his physical appearance. (Docket No. 1 at p. 7.) Moreover, Calderón claims that the exculpatory statements of his former co-defendants demanded the timely dismissal of the indictment. (<u>Id.</u> at p. 8.) Following relevant precedent, however, compels the Court to conclude that Caledrón's allegations of negligent investigation are jurisdictionally barred by the discretionary function exception to the FTCA. Accordingly, the negligence cause of action is **DISMISSED**.

**C.   False Arrest and False Imprisonment**

The Court lacks jurisdiction to adjudicate the false arrest and false imprisonment claims. Although the FTCA generally exempts intentional torts from the federal government's general waiver of sovereign immunity, it expressly permits actions against the United States for claims of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" that arise from the "acts or omissions of

investigative or law enforcement officers of the United States Government."  28 U.S.C. § 2680(h).  See also Solís-Alarcón v. United States, 662 F.3d 577, 583 (1st Cir. 2011); Abreu-Guzmán v. Ford, 241 F.3d 69, 75 (1st Cir. 2001).

To the extent that the law enforcement exception overlaps or conflicts with the FTCA's discretionary function exception, the Court holds that the law enforcement exception governs; that is, the FTCA permits plaintiffs to bring causes of action against the United States that arise from federal law enforcement officers' intentional torts.[6] See Paret-Ruiz v. United States, 943 F. Supp. 2d 285, 290-91 (D.P.R. 2013) (Gelpí, J.) ("[I]t is possible that law enforcement officers committing intentional torts will act in violation of a law and, therefore, the discretionary function exemption will not protect their conduct.").  The discretionary function exception, thus, does not require the dismissal of claims for false arrest or false imprisonment.  Id.  The United States could be liable, "in the same manner and to the same extent," for Calderón's false arrest and false imprisonment as a private individual would be in like circumstances pursuant to relevant state law.  Rodríguez v. United States, 54 F.3d 41, 44 (1st Cir. 1995) (quoting 28 U.S.C. § 2674).

---

[6] The FTCA defines "investigative or law enforcement officer" as "any officer of the United States who is empowered to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h).

The complaint ascribes liability to two distinct government agencies, only one of which is subject to the false arrest, false imprisonment, and malicious prosecution allegations. (Docket No. 1 at p. 10.) Calderón contends that "agents and employees of the Department of Justice and the DEA, engaged in numerous acts to keep secret information and evidence exculpatory to [Calderón]." Id. The DEA agents described in Calderón's complaint are law enforcement officers within the meaning of the FTCA, disqualifying them from the intentional tort exception set forth in section 2680(h). See Nguyen v. United States, 556 F.3d 1244 (11th Cir. 2009) (holding that DEA agent accused of intentional torts including false imprisonment was ineligible for the section 2680(h) exception); see also Solís-Alarcón, 662 F.3d at 583. Federal prosecutors, however, are not investigative or law enforcement officers within the meaning of the FTCA. Nogueras Cartagena v. United States, 127 F. Supp. 2d 296, 314 (D.P.R. 2001) (Dominguez, J.) ("Quite simply, dismissal is proper when the claims for malicious prosecution, false arrest and abuse of process are brought against federal prosecutors.") (citing cases); Bonilla v. United States, 652 Fed. Appx. 885 *890 (11th Cir. 2016) ("With respect to [the Assistant United States Attorney's] conduct, prosecutors do not qualify as 'investigative or law enforcement officers" within the meaning of 28 U.S.C. § 2680(h) as they are

not empowered to execute searches, seize evidence, or make arrests.").

The Assistant United States Attorneys who prosecuted Calderón are immune from false arrest, false imprisonment, and malicious prosecution causes of action pursuant to the FTCA. The DEA agents referred to in Calderón's complaint, however, qualify for the law enforcement exception.

According to Puerto Rico law, false arrest and false imprisonment accrue when "[a] person, whether or not a law enforcement officer, [. . .] by himself or through another one unlawfully detain[s] or cause[s] the unlawful detention of another person." Díaz-Nieves v. United States, 29 F. Supp. 3d 71, 77 (D.P.R. 2014) (Besosa, J.) (citing Ayala v. San Juan Racing Corp., 12 P.R. Offic. Trans. 1012, 1021); see also Fisher v. United States, 1992 U.S. App. LEXIS 28923 (1st Cir. 1992) (holding that the "district court correctly determined that [plaintiff's] false arrest claim under the FTCA accrued at the time of his arrest"). Additionally, because the false arrest and false imprisonment claims pursuant to Puerto Rico law share identical elements and raise no relevant distinction in this case, the Court treats them as identical causes of action. See Abreu Guzmán, 241 F.3d at 75 (internal citation omitted); Rodríguez, 54 F.3d at 44.

Calderón argues that the false arrest and false imprisonment claims are timely because he filed an administrative claim with the DEA within two years of the district court's judgment of dismissal. (Docket No. 9 at p. 6.) This calculation assumes an incorrect date of accrual. In Wallace v. Kato, the Supreme Court analyzed false arrest and false imprisonment as overlapping torts, defining both as "detention without legal process." 549 U.S. 384, 389 (2007) (holding that plaintiff's section 1983 claims for false arrest and false imprisonment were time barred). False arrest and false imprisonment end once the legal proceedings commence, when the purported victim is "bound over by a magistrate or arraigned on charges." Id at. 389.

The accrual date for the false arrest and false imprisonment date, thus, is no later than June 11, 2012, the date of Calderón's arraignment. (Case No. 12-434, Docket No. 79.) Calderón filed the administrative claim more than two-years later, on February 19, 2015. (Docket No. 9, Ex. 1.) Accordingly, both torts are time-barred pursuant to the FTCA and must be **DISMISSED**.

### D.   **Loss of Consortium**

Calderon's loss of consortium cause of action is also dismissed. Puerto Rico law provides that a plaintiff may recover for loss of consortium when his or her spouse has been injured. P.R. Laws Ann., tit. 31, § 5141; Kunkel v. Motor Sport, Inc., 349

F. Supp. 2d 198 (D.P.R. 2004) (Fusté, J.); Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 24 (1st Cir. 2009) ("The Puerto Rico Supreme Court has 'repeatedly recognized' that 'individuals who suffer distress because a relative or loved one is tortuously injured have a cause of action under Article 1802 against the tortfeasor.'"). The loss of consortium claim derives from an underlying claim of a relative or loved one. Id. To assert a loss of consortium claim, Calderón must allege that he "suffered emotional harm caused by the tortious conduct of the [United States] towards [Calderón's] loved one." Id.

Calderón sets forth no allegation that a loved one suffered derivatively from tortious acts committed by federal officers. Cf. Ramos v. Metro Guard Serv., 394 F. Supp. 2d 465 (D.P.R. 2005) (Pieras, J.) (denying motion to dismiss loss of consortium claim "[b]ecause co-Plaintiff Rivera's tort claim is derived from the harm allegedly suffered by his spouse, Plaintiff Torres, whose claims are all still before the Court"). Accordingly, the loss of consortium claim is **DISMISSED**.

### E. Intentional Infliction of Emotional Distress

The elements of an intentional infliction of emotional distress claim pursuant to Puerto Rico law are:

1. that the defendant engaged in extreme and outrageous conduct,

2.    that  such  conduct  was  intended  to  cause  the

plaintiff  severe  emotional  distress,  or  was  done  with

reckless disregard for the plaintiff's emotional state,

3.    that  the  plaintiff  suffered  severe  emotional

distress, and

4.    that  the  severe  distress  is  casually  related

to the extreme and outrageous conduct.

Soto-Lebrón v. Fed. Express Corp., 538 F.3d 45, 57 (1st Cir.

2008).  Accrual of the statute of limitations is triggered at the

time  of  the  underlying  injury,  when  Calderón  "[knew]  of  the

existence and the cause of his injury."  Román-Cancel v. United

States, 613 F.3d 37, 43 (1st Cir. 2010) (citation omitted).  The

date that Calderón knew of the United States' allegedly outrageous

conduct was June 6, 2016, the date of his arrest.  Docket No. 1

at p. 5; see López v. United States, 998 F. Supp. 1239, 1245

(D.N.M. 1998) (holding that intentional infliction of emotional

stress claim accrued when plaintiffs "were aware or should have

been aware of their injuries and causes of said injuries," and

dismissing claim as time barred).  Because more than two years

passed  before  Calderón  filed  an  administrative  claim,  the

intentional infliction of emotional distress cause of action is

**DISMISSED**.

### F. Malicious Prosecution

The complaint premises the malicious prosecution cause of action solely on Puerto Rico law. (Docket No. 1 at p. 16.) The United States has not waived sovereign immunity for claims arising directly from Puerto Rico law. The Court construes the malicious prosecution as a claim arising pursuant to the FTCA because this is the only alleged waiver of sovereign immunity set forth in the complaint.

Unlike false arrest and false imprisonment, malicious prosecution "permits damages for confinement imposed pursuant to legal process." Heck v. Humphrey, 512 U.S. 477, 482 (1994). To prevail on a malicious prosecution claim, Calderón must establish that "(1) a criminal action was initiated or instigated by the [United States], (2) that the criminal action terminated in favor of [Calderón], (3) the [United States] acted with malice and without probable cause, and (4) that [Calderón] suffered damages." Díaz-Colón v. Toledo-Dávila, 922 F. Supp. 2d 189, 204 (D.P.R. 2013) (Besosa, J.) (setting forth the elements of a malicious prosecution claim pursuant to Puerto Rico law) (internal citation omitted).

The first two elements of a malicious prosecution claim are satisfactorily alleged. The United States initiated a criminal action against Calderón. See Case No. 23-434. This

criminal action concluded in a judgement of dismissal pursuant to Federal Rule of Criminal Procedure 48(a), terminating the action in his favor. (Case No. 12-434, Docket No. 848.)

As to the third element, Calderón must allege "both that the [United States] acted with malice and that [the United States] acted without probable cause." Díaz-Nieves v. United States, 858 F.3d at 678, 688 (1st Cir. 2017). According to Calderón, DEA agents presented "maliciously and negligently obtained statements" to the grand jury because the physical description of "Calderón el de los puertos" differed from Calderón's physical description. (Docket No. 1 at p. 6.) Calderón also avers that his former co-defendants informed federal agents that Calderón "did not participate in the conspiracy charged and that he was being confused with somebody else." Id. at p. 7. Despite this information, Calderón maintains, the United States pursued his conviction and "[kept] secret information and evidence exculpatory to [him] in order to pressure him to enter a guilty plea agreement." Id. at p. 10. Accepting these allegations as true, the Court concludes that Calderón has adequately pled sufficient facts to satisfy the third element of his malicious prosecution claim.

With respect to the fourth element of his malicious prosecution claim, Calderón alleges that he suffered damages

because of the malicious prosecution, including emotional pain, loss of income, and divorce from his wife. _Id._ at p. 18. In light of these factual allegations, the Court is satisfied that Calderón pled a malicious prosecution claim that is plausible on its face, and has set forth sufficient facts to raise his right to relief above the speculative level. See _Twombly_, 550 U.S. at 570.

The United States contends that the malicious prosecution claim is untimely. (Docket No. 12 at p. 4.) The very precedent the United States cites, however, belies its argument. By way of example, the United States cites _Braunstein v. United States Postal Service_ for the proposition that "malicious prosecution claims do not accrue until the underlying prosecution terminates in favor of the plaintiff." No. 05-16390, 2007 U.S. App. LEXIS 8831 (9th Cir. 2007) (cited at Docket No. 12 at p. 4). (citing). In this case, the underlying prosecution terminated in favor of Calderón on March 25, 2014, the date the criminal counts were dismissed. (Case No. 12-434, Docket No. 848.) Pursuant to _Braunstein_, Calderon's malicious prosecution claim is timely because he filed the administrative claim on February 19, 2015, less than two years after the court's entry of the judgment of dismissal of the criminal action against him.

The Court reiterates that the federal prosecutors associated with the now dismissed criminal action in Case No. 12-434 are exempt from liability for the malicious prosecution cause of action. See supra Part II(B)(2); see also Bernard v. United States, 25 F.3d 98 (2d Cir. 1994) ("Because the FTCA does not authorize suits for intentional torts upon the actions of Government prosecutors, plaintiff cannot support his malicious prosecution claim with facts that arose after his indictment.").

Because Calderón has adequately pled a timely malicious prosecution claim pursuant to the FTCA, however, the Court allows Calderón to move forward with this cause of action insofar as it is alleged exclusively against federal law enforcement agents, and not the federal prosecutors.

## IV. Conclusion

For the reasons expressed above, the United States' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. (Docket No. 7.) The constitutional torts, negligence, false arrest, false imprisonment, loss of consortium, and intentional infliction of emotional distress causes of action are **DISMISSED WITH PREJUDICE**. The malicious prosecution claim, however, may proceed only insofar as this claim is brought against federal law enforcement officers.

There being no just reason for delay, Partial Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 28, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE